# Supreme Court of Florida

————————

No. SC13-539

————————

**THE FLORIDA BAR,**
Complainant,

vs.

**ROBERT JOSEPH RATINER,**
Respondent.

[February 22, 2018]

PER CURIAM.

We have for review a referee's report recommending that Respondent, Robert Joseph Ratiner, be found guilty of professional misconduct in violation of the Rules Regulating The Florida Bar (Bar Rules), and that he be suspended from the practice of law for a period of three years.[1]

Both The Florida Bar (Bar) and Ratiner have sought review of the referee's report. For the reasons discussed below, we approve the referee's findings of fact and recommendations as to guilt. We also approve the aggravating and mitigating

————————

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

factors found by the referee. However, we disapprove the referee's recommendation that Ratiner be suspended for a second three-year period, to run consecutive to an earlier suspension of three years. Based upon Ratiner's cumulative and escalating misconduct, the Court concludes that disbarment is the appropriate sanction.

## FACTS

Ratiner was admitted to practice law in 1990. In each of the three disciplinary cases brought against Ratiner, two prior and the instant case, the misconduct arose in the course of his representation of plaintiffs against E.I. DuPont De Nemours & Co., Inc. (DuPont). The first disciplinary case resulted in a sixty-day suspension and a public reprimand, to be followed by a two-year period of probation, *Fla. Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010), while the second case resulted in a three-year suspension. *Fla. Bar v. Ratiner*, 177 So. 3d 1274, 2015 WL 5156338, at *1 (Fla. 2015). Because the referee in this case found that the prior cases constituted aggravating factors, and because we conclude that they demonstrate the progression of Ratiner's disparaging misconduct towards other members of the legal profession, we discuss the earlier disciplinary cases below in the context of our determination that disbarment is warranted in this case.

The Florida Bar filed a complaint on March 22, 2013, alleging that on June 29 and December 14, 2011, and January 30, 2012, Ratiner violated the Bar Rules

in his representation of the plaintiff in the matter of *Sidran v. E.I. DuPont De Nemours & Co., Inc.*, case number 92-18377, in the Eleventh Judicial Circuit (Miami-Dade County, Florida).  After the complaint was referred to a referee, we stayed the proceedings upon the motion of the referee while the Court considered the second disciplinary case brought against Ratiner, case number SC12-393. Following the disposition in that case, *see Fla. Bar v. Ratiner*, 177 So. 3d 1274, 2015 WL 5156338 (Fla. 2015), we lifted the stay and the referee conducted a final hearing pertaining to whether Ratiner had violated the Bar Rules and the issue of sanctions.  The referee thereafter submitted his report for the Court's review, in which he made the following pertinent findings and recommendations.[2]

### *"Lie, Lie, Lie"*

One of the allegations of misconduct raised by the Bar was that Ratiner, during a post-trial hearing in the *Sidran* matter, was overheard saying "lie, lie, lie" in quick succession while opposing counsel conducted the direct examination of Ratiner's law partner.  At the hearing before the referee, the judge presiding in the *Sidran* case, Judge Amy Steele Donner, testified that she had heard Ratiner utter the words "lie, lie, lie," while at the time Ratiner denied that he had said those

---

2. The referee did not find that Ratiner engaged in additional misconduct as alleged by The Florida Bar.  Because the Bar does not challenge those findings by the referee, only the misconduct found by the referee is the basis for the recommendations as to guilt and is subject to the Court's review.

words.  Ratiner testified before the referee that he had been talking to his associate in a low voice but that he had no recollection of saying "lie, lie, lie."  In his report, the referee found Judge Donner's testimony at the final hearing that Ratiner had in fact spoken the words "lie, lie, lie" "very credible."  As a result, the referee found Ratiner guilty of violating Bar Rules 4-3.5(c) (a lawyer shall not engage in conduct intended to disrupt a tribunal) and 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct).

*Kicking Counsel's Table*

In its complaint, the Bar also alleged that Ratiner, in the post-hearing proceedings in the *Sidran* case, repeatedly kicked the leg of counsel's table where he was seated.  The lead opposing counsel in the *Sidran* litigation, Andrew Brenner, testified before the referee that Ratiner was kicking counsel's table "in a manner that was disruptive of the proceedings."  The referee had Mr. Brenner demonstrate how Ratiner had been kicking the table, and found it to be "very loud."  Judge Donner testified at the final hearing that she was aware that Ratiner had kicked the table, and she called a sidebar after he did it a second time.  As a result of the kicking incident, she ended the post-trial hearing.  Based upon the testimony of Judge Donner and Mr. Brenner, the referee concluded "that such behavior in fact would be disruptive to any judicial proceedings," and found that Ratiner intended to disrupt the proceedings and was therefore guilty of violating

- 4 -

Bar Rules 4-3.5(c) and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).

*Evidence of Additional Misconduct*

Although the referee did not make recommendations on the issue of guilt with regard to additional alleged misconduct charged by the Bar, he did summarize testimony from various witnesses pertaining to the additional alleged misconduct. We conclude that such evidence, as supported in the record, is relevant to our determination of attorney discipline. For that reason, we describe that additional evidence as follows.

Judge Donner testified that limits on closing arguments were agreed to by the lawyers, and when Ratiner exceeded his time, she gave him a few additional minutes but he stated that he would take whatever time he needed. Judge Donner also testified that she saw Ratiner " 'wrinkling and throwing' documents and that after 4-5 times of this behavior she reprimanded Respondent." On cross-examination, Judge Donner stated that she saw Ratiner throwing documents on counsel's table, that he denied it, and that she told him that he was calling her a liar because she did see him do it. Judge Donner described Ratiner's behavior at trial as "awful, that he was not respectful to the court or obeyed orders, and that she was 'appalled.' " Moreover, Judge Donner testified that Ratiner's behavior "had been

- 5 -

totally disruptive, that he was a 'bully' and that she called the Bar about Respondent's behavior." Finally, the referee found that there was clear and convincing evidence "that during the entire trial Respondent had been rude, overly aggressive, unprofessional and at times appeared to try to intimidate the witness."

*Recommended Sanction*

In determining the appropriate sanction, the referee found four aggravating factors under Florida Standard for Imposing Lawyer Sanctions 9.22, including the following: (a) (prior disciplinary offenses); (c) (a pattern of misconduct); (g) (refusal to acknowledge wrongful nature of conduct); and (i) (substantial experience in the practice of law). The referee found the following mitigating factors under Florida Standard for Imposing Lawyer Sanctions 9.32: (b) (absence of a dishonest or selfish motive); (g) (character or reputation); and (h) (physical or mental disability or impairment).[3]

In addition to the above-cited aggravating and mitigating factors, the referee considered the following cases prior to recommending discipline: *Fla. Bar v. Kelner*, 670 So. 2d 62 (Fla. 1996); *Fla. Bar v. Wasserman*, 675 So. 2d 103 (Fla. 1996); *Fla. Bar v. Morgan*, 938 So. 2d 496 (Fla. 2006); *Fla. Bar v. Abramson*, 3

---

3. The last mitigating circumstance derived from Ratiner's testimony at the final hearing that he had the flu on the day of closing arguments in the *Sidran* matter.

- 6 -

So. 3d 964 (Fla. 2009); *Fla. Bar v. Norkin*, 132 So. 3d 77 (Fla. 2013); *Fla. Bar v. Ratiner*, 46 So. 3d 35 (Fla. 2010); *Fla. Bar v. Chosid*, 500 So. 2d 150 (Fla. 1987); *Fla. Bar v. Vining*, 761 So. 2d 1044 (Fla. 2000); *Fla. Bar v. Walkden*, 950 So. 2d 407 (Fla. 2007); *Fla. Bar v. Rotstein*, 835 So. 2d 241 (Fla. 2002); *Fla. Bar v. Norkin*, 183 So. 3d 1018 (Fla. 2015); and *Fla. Bar v. Simring*, 612 So. 2d 561 (Fla. 1993). As discussed in our analysis below, the referee did not discuss any of the individual cases cited or why the cases supported his recommended sanction.

Based on his findings of fact, recommendations as to guilt, the aggravating factors and mitigating factors found, and cited case law, the referee recommended that Ratiner be suspended for a period of three years, to be served consecutively to his current three-year suspension.

## ANALYSIS

Before the Court, the Bar seeks review of the referee's recommended discipline of a consecutive three-year suspension. Specifically, the Bar argues that Ratiner should be disbarred. Ratiner filed a cross-notice of intent to seek review, challenging the referee's findings of fact, recommendations as to guilt, and the recommended sanction, arguing instead that he should receive at most a suspension to run concurrent to his previously imposed three-year suspension.

To the extent Ratiner challenges the referee's findings of fact for the Bar Rule violations, the Court's review of such matters is limited, and if a referee's

findings of fact are supported by competent, substantial evidence in the record, the Court will not reweigh the evidence and substitute its judgment for that of the referee. *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000); *see also Fla. Bar v. Jordan*, 705 So. 2d 1387, 1390 (Fla. 1998). To the extent Ratiner challenges the recommendation as to guilt, the Court has repeatedly stated that the referee's factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. *See Fla. Bar v. Shoureas*, 913 So. 2d 554, 557–58 (Fla. 2005). Moreover, the party challenging the referee's findings of fact and conclusion as to guilt has the burden of demonstrating that there is no evidence in the record to support the findings or that the record evidence clearly contradicts the conclusions. *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007). Lastly, because "the referee is in a unique position to assess witness credibility, this Court will not overturn his judgment absent clear and convincing evidence." *Id.* at 621; *see Fla. Bar v. Batista*, 846 So. 2d 479, 483 (Fla. 2003).

We conclude that the referee's factual findings pertaining to guilt are fully supported by competent, substantial evidence in the record and that the referee's findings are sufficient to support the recommendations as to guilt. Accordingly, we approve those findings and recommendations in full.

With regard to Bar Rule 4-3.5(c) (a lawyer shall not engage in conduct intended to disrupt a tribunal), the referee found that Ratiner violated this rule both

- 8 -

based upon his "lie, lie, lie" comment and his repeatedly kicking counsel's table. According to the referee, "such behavior [kicking the table] in fact would be disruptive to any judicial proceedings," and Ratiner intended to disrupt the proceedings. Bar Rule 4-3.5(c) provides that "[a] lawyer shall not engage in conduct intended to disrupt a tribunal." As discussed above, Judge Donner testified that Ratiner did in fact say "lie, lie, lie" and Mr. Brenner testified that Ratiner had repeatedly kicked counsel's table while a witness was testifying in the post-trial hearing. Ratiner ignores this testimony, relying instead upon his own testimony at the final hearing denying that he engaged in the alleged conduct. That, however, is not the appropriate standard for the Court's review. "An attorney cannot meet his burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings." *Fla. Bar v. Glueck*, 985 So. 2d 1052, 1056 (Fla. 2008). Here, the referee found Judge Donner and Mr. Brenner to be credible witnesses and rejected Ratiner's testimony in finding him guilty.

The referee further found that Ratiner's conduct in saying "lie, lie, lie" violated Bar Rule 4-8.4(a) (Misconduct), which provides in pertinent part that "[a] lawyer shall not violate or attempt to violate the Rules of Professional Conduct." Ratiner challenges the referee's findings on this issue by disregarding the testimony of Judge Donner, who was expressly found to be credible, and offering

- 9 -

his own testimony, which the referee rejected. In addition to there being substantial and competent evidence in the record to support the referee's findings, it is generally sufficient to find a respondent guilty of violating this rule where he or she has been found guilty of violating other Bar Rules. *See Fla. Bar v. Letwin*, 70 So. 3d 578, 582 (Fla. 2011) (Bar Rule 4-8.4(a), by its own terms, is necessarily violated whenever any other bar rule is violated).

Bar Rule 4-8.4(d) provides in pertinent part that "[a] lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers." The referee found that Judge Donner and Mr. Brenner both testified about Ratiner's behavior of kicking counsel's table, that both witnesses were very credible, and that Ratiner violated Bar Rule 4-8.4(d) based upon the kicking of counsel's table. As before, Ratiner argues that he should not have been found guilty based on this conduct because he testified that he did not recall behaving in that manner.

The referee was in the best position to judge the demeanor of the witnesses and their sincerity during the final hearing. The record supports the referee's factual findings, and Ratiner has failed to demonstrate that there is no evidence in the record to support those findings or that the record evidence clearly contradicts

the conclusions. We therefore approve the referee's findings of fact and recommendations as to guilt.

We now turn to the referee's recommended sanction, a three-year suspension to run consecutive to Ratiner's current three-year suspension imposed in *Ratiner*, 177 So. 3d 1274. The Bar urges the Court to disapprove this sanction and disbar Ratiner. In reviewing a referee's recommended discipline, the Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. *See Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const. At the same time, the Court will generally not second-guess the referee's recommended discipline, as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions (Standards). *See Fla. Bar v. Temmer*, 753 So. 2d 555, 558 (Fla. 1999). In addition, the Court views cumulative misconduct more seriously than an isolated instance of misconduct, and cumulative misconduct of a similar nature warrants an even more severe sanction than might dissimilar conduct. *Walkden*, 950 So. 2d at 410.

In imposing a sanction, the Court considers the following factors: "a) the duty violated; b) the lawyer's mental state; c) the potential or actual injury caused by the lawyer's misconduct; and d) the existence of aggravating and mitigating factors." Fla. Stds. Imposing Law. Sancs. 3.0.

- 11 -

To begin, we conclude that the referee's recommendation of a consecutive three-year suspension is contrary to Standard 2.3, which provides in pertinent part: "Suspension is the removal of a lawyer from the practice of law for a specified minimum period of time. . . . No suspension shall be ordered for a specific period of time *in excess of three (3) years*." Fla. Stds. Imposing Law. Sancs. 2.3 (emphasis added). In this case, while the referee specified that the recommended suspension was for three years, he also included that it be served consecutive to Ratiner's current three-year suspension, which was effective October 2, 2015. *See Fla. Bar v. Ratiner*, 177 So. 3d 1274, 2015 WL 5156338 (Fla. 2015). Thus, the effect of the referee's recommended sanction is that Ratiner would serve a six-year suspension, contrary to Standard 2.3. Further, the referee did not identify which Standard(s) he relied upon in recommending imposition of a consecutive suspension, other than the findings of aggravating and mitigating factors.

Standard 8.1 provides for disbarment, absent aggravating or mitigating circumstances, based upon prior disciplinary orders, as herein stated: "Disbarment is appropriate when a lawyer . . . has been suspended for the same or similar misconduct, and intentionally engages in further similar acts of misconduct." Fla. Stds. Imposing Law. Sancs. 8.1(b). Accordingly, without reference to the aggravating and mitigating circumstances applicable here, the Standards reflect that disbarment is the appropriate sanction.

- 12 -

Turning to the aggravating and mitigating factors found by the referee, we conclude that there is competent, substantial evidence in the record to support the referee's findings. Moreover, "[a] referee's findings in aggravation carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record." *Fla. Bar v. Ticktin*, 14 So. 3d 928, 937 (Fla. 2009).

With regard to the aggravating factor of prior disciplinary offenses (Standard 9.22(a)), we previously approved the facts and recommendations of guilt as provided in the separate referees' reports. *Ratiner*, 46 So. 3d at 36; *Ratiner*, 177 So. 3d 1274, 2015 WL 5156338 at *1.

Ratiner was disciplined in the first case for misconduct that occurred during a May 2007 deposition. *Ratiner*, 46 So. 3d at 36. The following findings of fact support the recommendations of guilt in that case:

> During the course of the deposition, [opposing counsel] attempted to place an exhibit sticker on the Respondent's laptop computer.
>
> Just prior to [opposing counsel's] attempting to place the exhibit sticker on the computer, the Respondent was standing up and speaking forcefully towards [opposing counsel].
>
> As soon as [opposing counsel] attempted to place the exhibit sticker on the computer, the Respondent very briefly touched [opposing counsel's] hand, then attempted to run around the table towards [him].
>
> Additionally, the [deponent] expressed that she was very scared as a result of the Respondent's conduct.

- 13 -

> The Respondent's own consultant had to attempt to calm the Respondent down and specifically told the Respondent to "take a Xanax."
>
> Further, while the Respondent was acting as described above, the court reporter stated, "I can't work like this!"
>
> Respondent then proceeded to forcefully lean over the deposition table, lambast [opposing counsel] in a tirade while proceeding to tear up the evidence sticker, wad it up and flick or toss it in the direction of [opposing counsel].
>
> The Respondent's conduct during the deposition was outrageous, disruptive, and intimidating to the witness, opposing counsel, and other persons present during the deposition and otherwise prejudicial to the administration of justice.

*Id.* at 37. We found that Ratiner violated Bar Rules 3-4.3 (Misconduct and Minor Misconduct), 4-3.5 (a lawyer shall not engage in conduct intended to disrupt a tribunal), 4-4.4(a) (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person or knowingly use methods of obtaining evidence that violate the legal rights of such a person), 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another), and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). We determined that the appropriate sanction in this first case was a sixty-day suspension and a public reprimand, to be followed by a probationary period of two years. *Id.* at 41. Also based upon the above-described misconduct, we agreed

- 14 -

that members of the Bar and law students could "view the video recording of the laptop incident in the context of a course on professionalism as a glaring example of how not to conduct oneself in a legal proceeding." *Id.* at 41 n.4.

In the second disciplinary case, the Bar filed a complaint against Ratiner based upon misconduct on October 13-14, 2009, during a document review session in a lawsuit styled *Frank Fuzzell, et al. v. E.I. DuPont, etc., et al.* Bonnie Daboll was the opposing counsel representing DuPont. The findings of fact in support of the recommendations as to guilt included the following:

> On the first day of the document review session, Mr. Ratiner referred to Daboll's co-counsel, Lea Souza-Rasile, also present that day, as a "dominatrix" and stated "you must enjoy dominating people." In a voice loud enough for everyone in the room to hear him, Mr. Ratiner made this comment to his expert, Dr. Fred Haupt, who was also present at the document review session. Mr. Ratiner's comments had no substantial purpose other than to embarrass Ms. Souza-Rasile. Mr. Ratiner's comments, whether knowingly or with callous indifference, did disparage, humiliate, and/or discriminate against another lawyer, Ms. Souza-Rasile.
>
> On the second day of the document review session, Daboll hired a videographer to record the remaining sessions due to Mr. Ratiner's behavior. . . . Mr. Ratiner vehemently objected to the placement of the professional videographer's camera during this document review.
>
> On October 14, 2009, while reviewing a box of documents, Mr. Ratiner stated that the documents contained therein were inconsistent with the index provided to him beforehand. Thereafter, Daboll removed the hard copy of her index from her notebook, walked over to Mr. Ratiner's table, and showed Mr. Ratiner one page of her index, keeping the remaining index consisting of several pages in her left hand by her side. Daboll kept her right hand on the document while

- 15 -

Mr. Ratiner viewed it. Mr. Ratiner maintained that his index was different from the index that Daboll was holding in her hand and he demanded a copy of her index, which Daboll refused.

Thereafter, Mr. Ratiner attempted to grab the document from underneath Daboll's right hand, and then immediately reached across her body and grabbed the papers which she had in her left hand. As Daboll attempted to hold on to the documents, she stated, "Don't grab [sic] ever again." Mr. Ratiner continued to attempt to forcibly take the papers from Daboll, causing a security guard (who was also present to assist in safeguarding the documents) to come across the room and intervene.

Final Report of Referee at 3-4, *Fla. Bar v. Ratiner*, 177 So. 3d 1274 (Fla. 2015) (No. SC12-393). We found that Ratiner violated Bar Rules 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice); 4-4.4(a) (a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person); 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). Consequently, on September 2, 2015, we imposed a three-year suspension. *Ratiner*, 177 So. 3d 1274, 2015 WL 5156338 at *1.

In addition to prior disciplinary history (Standard 9.22(a)), the referee also found the other aggravating factors under Standard 9.22, (c) (a pattern of misconduct), (g) (refusal to acknowledge wrongful nature of conduct), and (i) (substantial experience in the practice of law). In view of Ratiner's past

- 16 -

misconduct where he acted unprofessionally and disrupted legal proceedings, there clearly has emerged a pattern of similar misconduct. The referee also found that Ratiner attempted to shift the blame to others, thus demonstrating that he refused to acknowledge the wrongful nature of his conduct. Ratiner argues that this aggravating factor does not apply because he has consistently and in good faith claimed his innocence, citing *Florida Bar v. Karten*, 829 So. 2d 883 (Fla. 2002). To the contrary, we cannot agree that Ratiner's claim of innocence is made in good faith. Ratiner has denied the existence of such objectionable, disrespectful conduct over the years, even in the face of videotaped evidence and witness testimony. His argument or belief that said conduct constitutes the zealous representation of his clients is completely unacceptable. Finally, Ratiner admitted to the referee that he has been licensed to practice law since 1990, and thus has substantial experience in the practice of law.

On the issue of mitigation, the referee found the mitigating factors under Standard 9.32 (Factors which may be considered in mitigation) as follows: (b) (absence of a dishonest or selfish motive), (g) (character or reputation), and (h) (physical or mental disability or impairment). Ratiner argues that Standards 9.32(i) (unreasonable delay in disciplinary proceeding) and 9.32(m) (remoteness of prior offense) should also apply. Ratiner cites the fact that while the acts complained of occurred in 2011, the Bar did not file its complaint until March 22, 2013. In

addition, Ratiner argues that the prior disciplinary actions concerned events occurring in 2007 and 2009, while the current case involved events occurring in 2011. These mitigators have not been established. First, the Bar filed its complaint within the requisite time limitation. *See* Bar Rule 3-7.16(a) ("Inquiries raised or complaints presented by or to The Florida Bar under these rules shall be commenced within 6 years from the time the matter giving rise to the inquiry or complaint is discovered . . . ."). In addition, the referee sought to stay the proceedings, without objection by Ratiner[4], in the event that resolution of case number SC12-393 could impact the disposition of the instant case. Further, the prior cases are not especially remote in time, the prior offenses having occurred only two and four years earlier than the misconduct herein at issue. *See also Fla. Bar v. Varner*, 992 So. 2d 224, 230 (Fla. 2008) ("A referee's decision not to find that a mitigating or aggravating factor applies also carries a presumption of correctness and will not be disturbed unless clearly erroneous or without support in the record.").

In cases where lawyers have previously been disciplined for engaging in misconduct of a similar nature, the Court has generally taken an incremental

---

4. We further observe that Ratiner himself had sought a stay before the referee and an extension of time for filing of the referee's report, in light of continuing litigation in the *Sidran* case.

approach in imposing discipline, increasing the severity of discipline in each instance. *See Norkin*, 132 So. 3d at 92. The cases cited by the referee do not support imposition of an additional suspension; rather, two of those cases support disbarment. For example, in *Vining*, 761 So. 2d at 1048, we held that disbarment was the appropriate sanction for an attorney who had been suspended twice previously for similar misconduct. Similarly, in *Walkden*, 950 So. 2d at 411, we held that increasingly heavier sanctions, from a ninety-day suspension, to a ninety-one-day suspension, to a one-year suspension, next warranted disbarment.

Disbarment is an extreme form of discipline and is reserved for the most egregious misconduct. *See Fla. Bar v. Summers*, 728 So. 2d 739, 742 (Fla. 1999); *see also Fla. Bar v. Kassier*, 711 So. 2d 515, 517 (Fla. 1998) (holding that disbarment is an extreme sanction that should be imposed only in those rare cases where rehabilitation is highly improbable). Ratiner's intentional and egregious misconduct continues to demonstrate an attitude that is wholly inconsistent with professional standards, and there is no indication that he is willing to follow the professional ethics of the legal profession. As we observed in *Norkin*,

> One can be professional and aggressive without being obnoxious. Attorneys should focus on the substance of their cases, treating judges and opposing counsel with civility, rather than trying to prevail by being insolent toward judges and purposefully offensive toward opposing counsel. This Court has been discussing professionalism and civility for years. We do not tolerate unprofessional and discourteous behavior. We do not take any pleasure in sanctioning

- 19 -

[Respondent], but if we are to have an honored and respected profession, we are required to hold ourselves to a higher standard.

132 So. 3d at 92-93. Thus, based upon the foregoing discussion, the Court is left with but one course of action, and that is to disbar Ratiner.

## CONCLUSION

Accordingly, Robert Joseph Ratiner is hereby disbarred. Because Ratiner is currently suspended, this disbarment is effective immediately. Ratiner shall fully comply with Bar Rule 3-5.1(h). Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Robert Joseph Ratiner in the amount of $4,889.74, for which sum let execution issue.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.
LEWIS, J., recused.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Tallahassee, Florida, Adria E. Quintela, Staff Counsel, Sunrise, Florida, and Tonya L. Avery, Bar Counsel, The Florida Bar, Miami, Florida,

for Complainant

Kevin P. Tynan of Richardson & Tynan, P.L.C., Tamarac, Florida,

for Respondent